The first case of the afternoon is in re the adoption of S.G. for the appellant Mr. Moore, the appellee Ms. Chalstrom, and Ms. Bullock. You both can argue. Very good. You may proceed. Thank you, Your Honor. May the police report. Counsel. Your Honor, the issue that we are here today on is what is in this minor child's best interest. There are four statutes that concern the issue of custody. The Juvenile Act, the Only Marriage and Dissolution of Marriage Act, the Adoption Act, and the Probate Act. All of these acts have the overriding concern of what is in the best interest of this child. We're here on a procedural matter. The trial court made the determination that it was not in the best interest of this child to have a contested hearing as to where this child is going to spend the rest of her life. We believe, quite frankly, that that decision is in error. It's not as though the Hicksons are strangers to this girl. She lived with them for two years. Well, but what is the effect of the termination of parental rights of the child's parents? I believe that that is exactly what it does. As it terminates the parental rights of the parents, I don't believe that that severs the consanguinity bond that the grandparents have with their child. This child has had some blood in her. And this child lived with these people for two years. She's integrated in their house. Now, under the laws of the state of Illinois, I know that it is the public policy to strengthen the bonds of the family. And it is also the public policy to resolve complaints on their merits. We believe that there are tribal issues as to what is in this child's best interest with regards to where she should live with the rest of her life. As I said, she was integrated in their house. The Hicksons have standing under adoption, the Illinois Marriage and Dissolution of Marriage Act, and under the Probate Act to file their petition, which is what they did. The court made the determination, apparently, that they do not have standing because of a prior juvenile act determination. The juvenile act determination, the Hicksons were not a party to it. It was not race judicata as to them. There was not identity of parties. They were not in privy. And there was not a final judgment. Therefore, I don't believe that the trial court was correct when it made the determination under 2-619 that a prior judgment barred the Hicksons from proceeding this matter. Since this is a procedural matter, and we have sufficient evidence to raise a colorable claim as to what is in this minor child's best interest, and since it is this court's duty, all courts' duty in the state of Illinois to look out for minor children's best interest, we ask that the trial court decision be reversed. The Hicksons are good people. They should have their day in court to have a hearing on the merits. And that's what we're asking for. Thank you. Do you think the trial court was somehow discriminating against the Hicksons personally? I don't know. It is all a procedural issue. That is correct. I don't believe that there was animus in the trial court. So the trial court was following what he believed the law was. That is correct. Let me ask. If the Hicksons died intestate, could SG inherit from them? I believe she could. She is, as I said, related by consanguinity. I don't believe that the fact that the juvenile court terminated parental rights necessarily disinherits her as of right now. So if the Hicksons were to die, then yes, I believe that SG is an heir of theirs. Thank you, Your Honor. Ms. Chalstrom. Good afternoon. May it please the Court, Assistant Attorney General Anne Chalstrom for the Illinois Department of Children and Family Services. This Court lacks jurisdiction over this appeal. The September 29, 2009 order dismissing the Hicksons petition for adoption and other relief was a final and appealable order at that time. It was a final judgment. There was nothing more to adjudicate in that action, and it was appealable. The effect of the consolidation of the two actions did not merge the two cases into a single suit. Therefore, no Rule 304A finding was required to make that dismissal order appealable. Here. Why did the Court enter a 304A then? The Bakers, the foster parents, moved for consolidation of the action, and their motion noted that our requested consolidation based on two pending and competing adoption petitions, and the docket entry order of the circuit court said that it was granting that motion. So there's not a, you know, no articulated reasons by the circuit court reflected in our record on appeal. It just said that the consolidation motion was granted. Each of those cases retained their distinct identity, and the order dismissing the one is final and immediately appealable, and therefore no 304A language was required. The two actions did not merge into one. And as to the December 1, 2009 orders striking the Hickson's response to the Bakers petition and severing the cases, those are interlocutory, non-appealable orders at this time. Neither disposed of or terminated the litigation or some part of it. There was no final judgment has been entered in the Bakers adoption proceeding. That proceeding has been stayed. There's not been a determination on the merits of the adoption proceeding as to the best interest of the minor. Should this court determine it have jurisdiction, and we would request that it affirm the dismissal of the Hickson's petition with prejudice in its entirety, as to the adoption count, the child had to be available for adoption and was not by the Hickson's because DCFS consent was required. Well, let me ask you this just generally. If we're supposed to look out for the best interest of the child or children, which is I think what all court proceedings say, why wouldn't we want to hear from the grandparents? I mean, why wouldn't they intervene so they may not get any relief, but at least we hear from them as to what is in the child's best interest? I think there are two points I'd like to address with regard to yours. The first would be their adoption petition, and second may go to their attempting to answer the Bakers adoption petition. The first would be this child had to be available for adoption. The juvenile court had already entered orders making the child a ward of the court, granting DCFS custody and guardianship of the child, and giving DCFS the authority to consent to the adoption. DCFS consented to her adoption by the Bakers, the foster parents, and not the Hickson's. Therefore, she was not available for adoption by the Hickson's. The second part of my answer to your question would be the Hickson's, the grandparents, were not parties to the Bakers adoption proceedings, so they had no right to answer the Bakers adoption petition. In adoption proceedings, the entity or person having custody and guardianship legal-wise is a party to the proceeding, as well as the minor child, and here that was DCFS, as well as the minor child, who were parties in the Bakers proceeding. The Hickson's had no standing, if you will, to... Would it be correct that there are cases across the state where parental rights have been terminated and then either grandparents or aunts or siblings have adopted the children who were subject to the termination? Sure, right. So it isn't that DCFS has some problem with grandparents adopting after termination? Oh, in general? No, not at all. No, no, no. No, not in general. Just in this case, due to the juvenile court's order, and I'll remind the court that the Hickson's moved to intervene in that juvenile court proceeding after their rights were terminated. They were not statutory parties and they were denied the right to intervene as well as relief requested. They should have appealed that instead of bringing this separate action. But as far as adoption, no, Your Honor. We're only looking at this case, and DCFS consent was required by the terms and they gave their consent for the foster parents. Does the trial court have to accept a consent? Well, from my understanding, things don't stop there. That's a threshold matter. There would still be an investigation and the court could decide to... But afterwards, the trial court stayed the Baker's adoption proceeding at this point. DCFS has the consent given. I believe now the trial court would then hold a best interest hearing with regard to the foster parents adoption proceedings. So that doesn't end things, if that's what you're asking. It's my understanding that things move forward to a best interest hearing on the Baker's adoption petition. And those entities that are parties to that petition will participate in that hearing. What if the guardian ad litem at the best interest hearing put on evidence of blood ties and ready and willing adoptive grandparents? Would the court have the power to deny the adoption, thereby leaving open the opportunity for someone else to petition for the adoption of the child? I think at that point, the trial court would make a decision, considering all the evidence as to what it believed the best interest was. The evidence of other individuals who had ties or affiliations or connections with the child would generally be thought to be admissible at a best interest hearing. I would think so. I would think so. I don't know that the circuit court would be bound by the consent by DCFS. It's my understanding that that is a preliminary threshold requirement to get the ball rolling. And DCFS could not give consent to two different groups of people, and they gave the consent to one. So there will be proceedings on that adoption petition. But the way that works then, if let's say there are two, three, four, five different couples who are interested in adopting a particular child, and DCFS says, well, you win the lottery, we're going to give consent to you. If we accept your argument, that means everybody else is barred from participation and also by a priori success in trying to adopt a child. At that point, they would be. I think the circuit court commented that if the baker's adoption would not end up going through for some reason, then DCFS could give its consent, you know, once again to get the ball rolling. But you're correct as far as that comment. I guess, and that's really a preliminary question to more perhaps a philosophical one. I mean, it appears that your argument is that DCFS is the one who gets to choose from various competitors who's going to be able to adopt a child. Well, I mean, in this circumstance, when the child's award of the court, the parent's rights have been terminated, and there was a prior court order granting DCFS the authority to consent to an adoption, then DCFS would choose, and I'm not going to get into how they chose, or that's not reflected in our record, the process, nor would I comment on that. It's more of a global question in terms of whether or not that's the way the world ought to work. Well, in this particular case, I mean, that's how it's worked here. And they were given the authority to consent, and they've consented to one set of people. But this occurs when we're in a circumstance where the child has to be available for adoption, and that, of course, under the Adoption Act, the consent of any person or agency having legal custody of the child by court order, which they did. I mean, at that point, they're standing in the shoes of parents. You know, the parent's rights here were terminated. Just so I understand your response to Justice Connick's question, when the trial court is considering the best interest of whether the foster parent should adopt, DCFS would not object to evidence presented concerning the parental grandparents, bloodlines, why it might be in the best interest of the child for a relative to be able to adopt instead of the foster parents? I don't know. I think there would have to be evidence presented. I would hate to bind the department and say that they would always do or always not do certain things in a circuit court proceeding. But I suppose if someone sought to introduce that type of evidence in the circuit court would consider it. Well, it seems to me you're arguing that the DCFS would be justified in objecting on the grounds of relevancy because DCFS is only considering that consent has been given to the foster parents. No one else, just the foster parents. Therefore, none of that would be relevant. Is that correct, incorrect? Is that a logical extension of your argument here today? I guess it could go either way. I don't know definitively what would happen in that circumstance. I apologize. I don't know quite how to answer that question. Thank you. Your time is up. Thank you. Good afternoon. May it please the Court. My name is Ellen Bullock and I represent the Bakers in this appeal. They are the appellees. Just a couple things. I think that, Justice Turner, that that does happen. I'm an experienced adoption practitioner in the circuit courts. And DCFS, at the best interest stage of the proceeding, DCFS sometimes brings in new best interest evidence and guardian ad litem sometimes bring in new best interest evidence. And the circuit court is careful to listen to those and careful to consider those. That is not the case here. We haven't reached best interest in this particular case. Best interest has never been on the table. Evidence was proffered to the circuit court and it refused to consider the evidence and refused to consider the issue of best interest in this case. So it has not been before the court. And so in that sense, the court's decisions thus far are not best interest decisions. And I think that I disagree with opposing counsel that that's what's here today. It's not here today. Best interest hasn't been reached. Illinois does often leave best interest aside for a secondary or a bifurcated proceeding. As an analogy, in termination of parental rights proceedings, the courts have decided that first, the unfitness must be addressed separately. And then second, the best interest must be addressed. So that would be an instance where best interest is not decided at the first stage of the proceeding and is kept separate until the second stage of the proceeding. Again, not a proceeding we're here today, but just to address Your Honor's question about best interest. I have a couple things to say about the Adoption Act. And first, very briefly, in the appellant's reply, they raised language by myself as waiving the appellate jurisdiction argument. I just repeat what I said below in that case, which was I thought the 30 days had already run, but this morning opposing counsel was still considering appealing. So I guess rather than be in limbo forever, I'm going to ask you to make it, you know, and start the 30 days running again because I don't want it up in the air. Pardon the not very great language. It's straight from a transcript. But that is what was said. I think that appellate jurisdiction is this Court's decision, not mine. It never was mine. And I certainly never thought I was making an appellate jurisdiction decision. This case was consolidated early on. I think that consolidation is a discretionary matter with the trial court. And the trial court used its discretion. It didn't tell us how, but I'm making a guess, an educated guess. There's two petitions relating to the same minor child. Let's not, first of all, be inefficient and have two courtrooms next door to each other working on these same issues. And second, let's not have inconsistent results or strange results entered. Let's consolidate these proceedings. They were consolidated in a very careful manner, and they stayed separate. They were consolidated if Your Honors would think of oil and water, how it sits together, but not all that comfortably, and it still looks kind of separate, as opposed to red Kool-Aid and water, which just get all mixed up and you basically have pink Kool-Aid. I think that the consolidation below was of the oil and water type, not the red Kool-Aid and water type. And one of the reasons I think that is because the Court entered an interim order in my adoption proceeding that was never transferred over to the Hickson adoption proceeding. That interim order gave custody to the Bakers, the foster parents, and it also appointed guardian ad litem only for the child in the Baker proceeding, not in the Hickson proceeding. So there was obviously a consolidation, but it was obviously not a full-fledged intermingling of interests. And it certainly didn't change the party status of anybody, and not the Hicksons. The Illinois Adoption Act, which is the source of law here that I would like to rely on, the Illinois Adoption Act says who is a respondent. And it is the minor child, the agency that has the authority to consent to the adoption, and any birth parents whose rights have not been terminated. So the Hicksons were never a party in the Baker proceeding and never could be a party in the Baker proceeding. Competing petitioners are not proper party respondents, and birth grandparents are not proper party respondents. The Illinois Adoption Act makes some threshold requirements. The bench used the word threshold, and I think that is the appropriate word. Standing is not merely a matter of able-bodied persons of reputable character of a certain age. That is not the case in adoption. If it were, we would have the absurd result where you would have neighbors thinking the little girl down the street was cute and they would petition to adopt her because they were of reasonable age and a good moral character. That is not the way. The Adoption Act has several very important foundational threshold requirements. And one is that the child be available for adoption. And this is a necessary prerequisite to avoid the absurd result we were just talking about. It is necessary and important that a child be available for adoption. This child, S.G., was available for adoption through a very careful set of proceedings taking place in the juvenile court whereupon parental rights were terminated under the statute. And after parental rights were terminated or at the same time, a guardian was appointed for the child. So she has a guardian. That is the Department of Children and Family Services. She is not in need of a guardian. She has one. And that guardian was given the authority to consent to her adoption. And it did so. I believe those are threshold issues, not random, like maybe we will get to them later issues, but actual threshold issues in the Adoption Act that preclude the Hicksons from adopting this child. And it isn't as if the statute doesn't work that way or tell us it works that way. There is much interplay between the Juvenile Court Act and the Adoption Act. And this is the time when the interplay between those two acts is most common and where it is done that way if the parental rights are terminated. Parental rights are fundamental. So until they are terminated, the birth parent's rights are the predominant or the preeminent rights. But at the time of termination, then the child is in need of a guardian and then adoption becomes the preferred interest. I think that there is lots of law in the state of Illinois that says adoption is preferable to other less permanent and less stable legal statuses for a child who is available for adoption as S.G. was by the Bakers. What is the status of the law as to a contingent or limited consent by a parent who is surrendering? I remember some cases regarding the mother says, dad is out of the picture, rights have been terminated, mother says I consent to this adoption, but if and only if the child is placed with and adopted by named parties. That's in the statute. Are those permissible? They are permissible if the child is not yet in the, does not yet have the, first of all parental rights haven't been terminated yet obviously, there wouldn't be a consent necessary. It's in the Adoption Act consent provisions. There's a special one. You can't use it in like an independent adoption. You would have to use it in a DCFS adoption. When the department is present, then there is that. So the department could take the consent. Yes, the department I think has to take the consent. But take it with the understanding that it could only consent then to the adoption of the named persons. Right. Okay. And that isn't available to say a private agency, you know, Baby Blessings or something, that wouldn't be available. It's just available when the department can take it. Well let me ask you another question. As the law presently exists, if for some reason the Hicksons were to be deceased, could SG inherit from them? You know I'm not an expert on probate and inheritance, but possibly for the short window of time she possibly could. But the whole purpose of the Adoption Act and the goals of meeting a child's permanency needs are to move towards adoption. And at that time, no, she could no longer inherit, obviously after she's been adopted. Once the adoption occurs. Right. But I think there possibly is a, but I'm not an expert on inheritance. But it would strike me as it's possible for a short period. The related child adoption question. Counsel, so if DCFS from the very get-go never considered the grandparents for placement, for guardianship, consent to be adopted parents, never even looked at that possibility for any of those things. That's okay under the law? No problem with that? I don't think that's in this record at all. No, no. It's asked. But I understand your question. If that's what occurred. I think DCFS, once it has been appointed, the guardian of the child has some rights. But it does have some regulations also. And one of them is, I think it was mentioned, to preserve family ties. So I think DCFS's own regulations tell it to be aware of birth family ties. And I think it often is. Because as one of the justices mentioned, many of these DCFS subsidized adoptions are related child adoptions. Many, even most, are related child adoptions. So I think often birth family grandparents, aunts, sisters, brothers, do step into the breach. But to answer your question very forthrightly, I think DCFS does gain the power and the authority to consent to the adoption. Now its own regulations say it should consider appropriate birth family placements. But it does gain the power to make that judgment. It's a lot of power. It is a lot of power. But children are, you know, given, it's given a lot of power for the best interest of our children. We've asked you some questions. If you'd like to sum up, you may. I would just say that I think that here we did have a consolidated proceeding. I do want to make a couple of just minor points on the severance and strike issues. After the Hickson's petition was dismissed in its entirety, adoption, guardianship, custody, and visitation, then the Hickson's tried to proceed in the Baker proceeding. And I think that that is just not the way it's done. Their own petition was the place to act, and that was the place to go up for further relief if they needed to do so. That strikes me. As the law presently exists, or as you and Ms. Chalstrom assert it to be, it would then be possible for a parent to be estranged from his or her own parents. To have a child, to have parental rights terminated, and have that child placed for adoption without grandparents on either side of the child's life. Even being aware of the juvenile court proceedings, because they're not necessary parties. They don't get served. DCFS may be unaware of them because of a lack of cooperation from the parent. Or the parent just says, well, I don't have anything to do with my parents. They live in Indiana, or whatever. I don't know what links DCFS would go to, but we can... DCFS could act in an ill manner, I think. I don't think it does. Certainly not the record doesn't show that in this case. But there is some things going on. And one is, like I mentioned earlier, DCFS does have its own rules, and those do foster that they look within the family. So that is not something that they're unaware of. Now, are you saying at the end of the day, could they unfairly... I'm not judging whether it's fair or unfair. In terms of notice, or who knows what about who, such a case could go through the process. Under the act, I think they could. There also are cases I've seen, this is pretty far afield, where the birth parent doesn't want the birth grandparent involved, hides the child, and basically makes that very clear, that they don't want their bloodline to adopt the child. And they do want the child adopted by what would be called strangers, soon to become family. Thank you. Mr. Moore, rebuttal? Thank you, we take this matter under advisement.